UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-23976-CV-LENARD
(16-20611-CR-LENARD)
MAGISTRATE JUDGE REID

TERRENCE ANTHONY WILLIAMS,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.    Introduction

This matter is before the Court on Movant's *pro se* motion to vacate, filed pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence entered following a guilty plea in Case No. 16-20611-CR-Lenard. [CV-ECF No. 1]. ].[1]

  Movant was convicted of possession of a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [*See* CR-ECF No. 60].

---

[1] This Report uses the citation "CR-ECF No. ___" to reference docket entries in the underlying criminal Case No. 16-20611-CR-Lenard." This Report uses the citation "CV-ECF No. ___" to reference docket entries in the instant federal habeas case.

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-2; and Rules 8 and 10 Governing Section 2255 Proceedings in the United States District Courts.

The Court has reviewed Movant's motion [CV-ECF No. 1], all pertinent portions of the underlying criminal file, the government's response [CV-ECF No. 6], and the Presentence Report (PSR), addendum, and statement of reasons (SOR).

## II.   Claims

Construing the § 2255 motion liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant raises the following four claims:

1. Ineffective assistance of trial and appellate counsels for failure to investigate the traffic citation which was the basis of an illegal stop. Counsel's failure to file a suppression motion resulted in Movant having to file a *pro se* motion to suppress. [CV-ECF No. 1 at 4, 13].

2. Movant's indictment violates principles of Double Jeopardy. [*Id*. at 5, 16].

3. Ineffective assistance of trial counsel for failure to object to the criminal history calculation in the PSR for the three points incurred for Miami-Dade Case No. F98-18040[2] and two points incurred for Miami-Dade Case No. F14-11050.[3] [*Id*. at 6, 16].

---

[2] *See also* PSR ¶ 25.

[3] *See also* PSR ¶ 31.

    4.  Prosecutorial misconduct for submitting the traffic citation as an exhibit to demonstrate probable cause where the citation was dismissed one year earlier. [*Id*. at 8, 16-17].

Movant seeks an evidentiary hearing. [*Id*. at 12]. Also, pursuant to his permitted supplements, Movant raises a claim pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019). [CV-ECF No. 12 and 16]. He claims the intervening change in the law was unavailable to Movant at the time of his initial filing. [CV-ECF No. 12 at 2]. Movant asserts his conviction was, therefore, unconstitutional and requires resentencing or a total vacation of his conviction, in light of *Rehaif*. [ECF No. 16].

Upon careful and thorough review, for the reasons stated within this Report, Movant's motion should be DENIED.

## III.   Relevant Procedural History

### A. *Indictment, Motion to Suppress & Suppression Hearing.*

Movant was charged in a one-count Indictment with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[4] [CR-ECF No. 1]. Movant faced a maximum penalty of ten years in prison. [*Id*. at 3].

On November 27, 2016, counsel filed a corrected motion to suppress physical evidence. [CR-ECF No. 24]. Counsel argued that Movant's vehicle stop was unlawful because he did not commit a traffic violation, the officer flagged Movant

---

[4] The Indictment contains two spellings for marijuana. This Report uses "marijuana" for consistency.

3

down and directed him onto the shoulder, and the officer searched the vehicle without consent. [*Id*.]. Counsel argued there was no probable cause for the search and seizure. [*Id*.].

The same day, Movant, represented by counsel, appeared for the suppression hearing before the magistrate judge. [CR-ECF No. 39]. Counsel explained to the court that Movant wanted him to present certain supplemental arguments to the suppression motion but, in his professional opinion, did not believe it was strategically wise to raise them. [*Id*. at 2-3]. The court gave Movant the opportunity to explain his additional arguments; and Movant stated that his *pro se* motion had three grounds in addition to those raised by counsel. [*Id*. at 4]. The court agreed to review the grounds Movant had raised and to allow the government to review them. [*Id*. at 4-5].

Trooper Rodriguez testified he was standing by the apex on the highway where he was "conducting routine traffic stops for vehicles cutting across the apex" and, when he saw Movant cut off other vehicles in order to cross the apex, he immediately directed Movant to stop. [*Id*. at 8-11, 25-26]. Rodriguez testified that he directed Movant to pull over by pointing to him and advising him to do so; and Movant complied. [*Id*. at 12-13]. Rodriguez testified that he asked Movant for identification, explained the reasoning for the stop, noticed the odor of marijuana coming from the vehicle, and directed Movant to exit the vehicle. [*Id*. at 13-14, 28-

4

29]. Movant admitted he had marijuana in the car; and Rodriguez proceeded to search the vehicle. [*Id*. at 14]. Rodriguez found a handgun in the center console, verified the firearm was stolen, continued the search of the vehicle, and, subsequently, found a second firearm in the trunk, which was also stolen. [*Id*. at 15-17]. At that point, Movant was advised of his *Miranda* rights, was issued a traffic citation, and taken to the police station. [*Id*. at 18]. On cross-examination by Movant's counsel, Rodriguez admitted there was no reference to marijuana in the police report [*Id*. at 31-35]. Counsel conducted a full cross-examination of Rodriguez as to the search of the vehicle; and Rodriguez admitted part of the report was inaccurate. [*Id*. at 36-49].

Officer Diaz testified that he was also conducting traffic stops at the same location and became involved in Movant's traffic stop. [*Id*. at 49-50]. Diaz confirmed Rodriguez's version of events related to the search of Movant's vehicle. [*Id*. at 52-54]. Diaz admitted on cross-examination that he did not see Rodriguez conduct the stop, only the search. [*Id*. at 54-55].

Finally, a transcript of Movant's jailhouse phone call containing an admission was presented at the hearing. [*Id*. at 55-56; *see also* Tr. of Telephone Call CR-ECF No. 41-1 at 11]. The court also directed that Movant's *pro se* motion be uploaded to the docket as an unsworn document and that it would be reviewed further by the court. [*Id*. at 59].

5

In closing arguments, counsel maintained the stop and subsequent search were illegal, claimed Movant did not admit to possessing marijuana, and challenged the credibility of the witnesses. [*Id*. at 60-65].

The magistrate judge issued a Report finding the officers' testimony was credible, the stop was lawful, there was probable cause to search the car, and the search of the trunk was incident to Movant's arrest. [CR-ECF No. 35]. Counsel filed objections. [CR-ECF No. 46]. The district court struck Movant's *pro se* motion because, as represented by counsel, he was not entitled to hybrid representation. [CR-ECF No. 44]. And, alternatively, Movant's *pro se* motion failed on the merits. [*Id*.]. The district court adopted the magistrate judge's Report, concurring the traffic stop was reasonable and the search was legal under the automobile exception. [*Id*.].

## B.  *Plea Agreement and Plea Hearing*

In a factual proffer supporting the plea agreement, Movant admitted the following facts were true. [CR-ECF No. 53]. During routine traffic enforcement duty, Rodriguez witnessed Movant nearly cause an accident by crossing over the apex, and subsequently pulled Movant over. [*Id*. at 1]. Movant complied. [*Id*.]. After asking Movant for his license and registration Rodriguez smelled marijuana coming from the vehicle, advised Movant of the odor, and asked him to step out of the vehicle. [*Id*.]. Movant admitted he had a small bag of marijuana in the car door, Rodriguez searched the vehicle and found the marijuana and a pistol. [*Id*. at 2]. Upon

6

learning the firearm was stolen, Movant was placed under arrest; and Rodriguez continued the search finding a second firearm in the trunk, which was also stolen, as well as numerous rounds of ammunition. [*Id*.]. Movant admitted he is a convicted felon for a 2005 conviction for attempted second-degree murder, for which he was sentenced to eleven years in prison. [*Id*.].

Movant entered into a negotiated written plea agreement. [CR-ECF No. 52]. The terms of the plea agreement most relevant to this habeas proceeding are as follows. Movant acknowledged that the court would compute an advisory sentence under the Sentencing Guidelines determined by relying in part on the results of a pre-sentence investigation by the court's probation office. [*Id*. at 1-2]. Movant acknowledged that although the court was required to consider the sentencing guidelines and calculate his advisory guidelines range under the guidelines, it was not bound to impose a sentence within that range. [*Id*. at 2]. Furthermore, Movant understood the court could sentence him to ten years in prison, the statutory maximum, followed by three years supervised release, and a fine of up to $250,000. [*Id*.].

The parties agreed that, at sentencing, the government would recommend a two-level reduction, pursuant to U.S. Sentencing Guidelines Manual § 3E1.1(a) (U.S. Sentencing Comm'n 2016) (U.S.S.G.), based on Movant's affirmative and timely acceptance of personal responsibility. [*Id*. at 3]. If Movant's offense level was

16 or greater, the government would request an additional one-level decrease pursuant to U.S.S.G. § 3E1.1(b) for assisting the authorities in the investigation or prosecution of his own misconduct. [*Id*.]. Movant acknowledged that any estimate of the probable sentencing range whether from defense counsel, the government, or the probation office was a prediction not a promise and was not binding on the court. [*Id*. at 5]. Movant would not be permitted to withdraw his plea based on the court's decision not to accept the recommendations. [*Id*. at 3-4].

In addition, parties agreed to recommend certain findings: a base offense level of 20, a two-level enhancement because the firearms were stolen, no upward or downward adjustments apply, and would recommend the high-end of the guideline range factoring in a three-point reduction for acceptance of responsibility. [*Id*. at 4].

The district court conducted a change of plea hearing, pursuant to Fed. R. Crim. P. 11 where Movant was represented by counsel. [CR-ECF No. 66]. During his plea colloquy, Movant explained his educational background, denied being treated for mental illness, and denied being under the influence of any substance that would interfere with his ability to understand counsel's advice. [*Id*. at 3-4]. Movant confirmed he understood he was waiving his trial rights as well as certain civil liberties. [*Id*. at 4-6]. The government presented the factual basis of the offense; and Movant agreed it was accurate. [*Id*. at 6, 10]. Movant admitted he read and understood the factual proffer and discussed it with counsel before signing and

confirmed he did not have any deletions or corrections to the factual proffer. [*Id.* at 10]. Movant then plead guilty admitting that he was doing so because he was, in fact, guilty and understanding he faced a maximum sentence of ten years in prison. [*Id.* at 10-11].

Movant confirmed he discussed the sentencing guidelines with counsel and understood his sentence could be different from any estimates his counsel may have given him. [*Id.* at 13]. Movant denied anyone forced, threatened, or coerced him into pleading guilty, he had sufficient time to confer with counsel, and was satisfied with counsel's representation. [*Id.* at 14, 22]. The court reviewed the plea agreement and informed Movant the court may depart from the guideline range and may raise or lower the sentence; and Movant confirmed his understanding of the plea agreement. [*Id.* at 15-22]. Counsel confirmed that pleading guilty was in Movant's best interest and there was sufficient evidence to convict. [*Id.* at 23-24]. The court found Movant entered "a knowing and voluntary plea supported by an independent basis in fact" and then adjudicated Movant as guilty. [*Id.* at 24].

### C. Presentence Report (PSR), Objections

In preparation for the PSR, Movant provided a verbal statement accepting responsibility for his actions. [PSR ¶ 13]. The sentencing guidelines for Movant's violation of 18 U.S.C. § 922(g)(1) is found in U.S.S.G. § 2K2.1 making his base offense level 20. [PSR ¶ 14]. Because the firearm was stolen, Movant received a

two-level increase pursuant to U.S.S.G. § 2K2.1(b)(4)(A). [PSR ¶ 15]. Movant received no other adjustments. Movant received a two-level decrease for accepting responsibility pursuant to U.S.S.G. § 3E1.1(a) and a one-level decrease for assisting authorities in the investigation of his own misconduct. [PSR ¶¶ 21, 22]. Accordingly, Movant's total offense level was 19. [PSR ¶ 23].

Movant incurred criminal history points. He received three points for a 1998 conviction for lewd assault on an eleven-year old victim; although initially adjudication was withheld, Movant violated his probation twice and was sentenced to 366 days in state prison (Miami Dade County Case No. F98-18040). [PSR ¶ 25]. Also, Movant received three points for his 2003 conviction for second-degree murder and two points for failing to register as a sex offender (Miami Dade County Case No. F14-11050). [PSR ¶¶ 29, 31]. With a total of eight criminal history points, Movant's criminal history category was IV. [PSR ¶ 32]. Based on a total offense level of 19 and a criminal history category of IV, Movant's guideline range was 46 to 57 months. [PSR ¶ 78].

Movant's counsel filed objections to the PSR challenging the calculation of all points for Movant's criminal history, specifically, paragraphs 25 through 42, and that those calculations were made without the proper *Shepard's*[5] documents. [CR-ECF No. 58].

---

[5] *Shepard v. United States*, 544 U.S. 13, 125 (2005).

*D. Sentencing, Final Judgment, and Final Presentence Report*

On March 29, 2017, Movant appeared for his sentencing hearing represented by counsel. [CR-ECF No. 67]. Counsel renewed his objections and asked the court not to factor in the lewd act conviction. [*Id*. at 4-7, 9-12]. The court granted the objection because the factual predicate for the offenses in ¶¶ 25, 26, 27, and 28 were not established. [*Id*. at 7-18]. Counsel argued numerous mitigating factors on Movant's behalf. [*Id*. at 21-25]. Movant was granted the opportunity to speak on his behalf. [*Id*. at 25]. Movant apologized to the court, explained some of his criminal history, detailed more recent accomplishments, and asked for consideration of those factors in sentencing. [*Id*. at 25-26]. The court weighed the statutory sentencing factors of 18 U.S.C. § 3553(a) and stated that, given Movant's personal history, it would not sentence him to a much higher sentence. [*Id*. at 27-28]. Yet, "putting aside even the lewd assault," the court's concern was Movant's second-degree murder conviction. [*Id*. at 28]. Given Movant's prior criminal history and the facts of the instant offense involving two firearms which were stolen, the court sentenced Movant to 72 months in prison, albeit above the guideline range to protect the public, followed by a three-year term of supervised release. [*Id*. at 30-31; *see also* CR-ECF No. 60].

*E.  Direct Appeal*

Movant appealed his sentence to the Eleventh Circuit Court of Appeals as substantively unreasonable. [CR-ECF No. 62]. *See United States v. Williams*, 721 F. App'x 905 (11th Cir. 2018). The Eleventh Circuit determined that it was permissible for the court to rely on Movant's second-degree murder conviction, the fact that the guns seized were loaded, and other facts to justify an upward departure. *Id*. at 907-08. The fact that the parties jointly recommended the high end of the guidelines did not divest the court of its discretion to impose an upward variance. *Id*. at 909. On January 11, 2018, the appellate court affirmed the sentence. [*Id*.].

Movant did not appeal further. Accordingly, his conviction became final 90 days later when the time to seek review by the Supreme Court of the United States expired on April 11, 2018. Movant had one year to timely file a motion to vacate pursuant to 28 U.S.C. § 2255, until April 11, 2019. Movant timely filed the instant petition on or about September 20, 2018. [CV-ECF No. 1]

## IV.    Threshold Issue – Timeliness

Parties correctly agree Movant's motion is timely filed.

## V.    Applicable Law

*A.  Standard of Review of Section 2255 Motions*

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released

12

upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255.

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal."

*United States v. Frady*, 456 U.S. 152 (1982); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under § 2255. This is because "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (internal quotations omitted)).

Ineffective Assistance of Counsel Principles

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Harrington v. Richter*, 562 U.S. 86, 104 (2011). If the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland*, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). To establish

14

prejudice, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

The burden of proof is on Movant, not the government, to establish that vacatur of the conviction or sentence is required. *Beeman v. United States*, 871 F.3d 1215, 1221-1222 (11th Cir. 2017). *See also* 28 U.S.C. § 2255(b), (e); Rule 2 and 4 of the Rules Governing Section 2255 Cases.

Bare, conclusory, allegations of ineffective assistance do not satisfy *Strickland*. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320 (11th Cir. 2012). *See also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

### C. *Guilty Plea Principles*

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and

likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (table); *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003), attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986).

Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

16

## VI.   Discussion

### A.  Claim 1

*Movant's Claim that Counsel Failed to Investigate the Citation and Failure to File a Suppression Motion is Controverted by the Record.*

In **Claim 1**, Movant claims both trial and appellate counsel failed to investigate the traffic citation which was the basis of an illegal stop and the failure to file a suppression motion resulted in Movant having to file a *pro se* motion. [CV-ECF No. 1 at 4, 13]. The government correctly asserts that Movant's claim is "factually incorrect" as demonstrated by the record. [CV-ECF No. 6 at 7]. Movant's claim fails.

As narrated above, the record belies Movant's claim. Trial counsel did file a suppression motion before Movant filed a *pro se* motion. [CR-ECF No. 24]. Moreover, at the sentencing hearing, counsel explained to the court that, strategically, he disagreed with some arguments Movant wanted to raise. [CR-ECF No. 39 at 2-3]. At the suppression hearing, the court permitted Movant to explain his additional arguments and accepted his *pro se* motion. [*Id.* at 4]. Review of the suppression hearing transcript reveals that counsel was well prepared, properly cross-examined the witness, and, ultimately, presented his best arguments, which were also aligned with Movant's arguments. The magistrate judge found the officers' testimony credible, the stop was lawful, there was probable cause to search the car, and the search of the trunk was incident to a valid arrest. [CR-ECF No. 35].

17

Counsel properly filed objections. [CR-ECF No. 46]. The district court made clear that because Movant was represented by counsel, he was prohibited from submitting *pro se* motions and, alternatively, his arguments failed on the merits. [CR-ECF No. 44].

The court determined the traffic stop was legal (crossing over the apex on the highway), there was probable cause to search the car (smell of marijuana), and the search of the trunk incident to Movant's arrest search was legal under the automobile exception. [*Id.*]. Despite, Movant's assertions, the citation was not used to support probable cause for the stop or subsequent search.

Ultimately, Movant's claim that trial counsel failed to investigate the circumstances of the traffic citation and subsequent stop, search and seizure is controverted by the record. Counsel was not deficient where he actually filed a suppression motion, argued vigorously on Movant's behalf at the suppression hearing, and filed subsequent objections to the magistrate judge's report.

Because there is no deficiency, Movant's claim that "counsel misadvised him to plea[d] guilty" because he failed to consider various other arguments such as "racial profiling," and "a false arrest report," is controverted by the record. In cross-examination of the witness, counsel identified certain inaccuracies in the police report. [CR-ECF No. 39 at 36-49]. Furthermore, following counsel's arguments[6] at

---

[6] *See* counsel's closing arguments at CR-ECF No. 39, pp. 60-66.

the suppression hearing, the magistrate judge stated, "I do not find that this was an impermissible illustration of racial profiling." [*Id*. at 66].

Even if counsel did not present all of the arguments Movant requested, it is of no consequence. It is well-settled that matters of trial strategy do not amount to ineffectiveness. We begin with the premise that "under the circumstances, the challenged action[s] might be considered sound trial strategy." *Strickland*, *supra*, at 689. "Counsel is 'strongly presumed' to make decisions in the exercise of professional judgment. That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) citing *Massaro v. United States*, 123 S. Ct. 1690, 1694 (2003) (slip op., at 4). "Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Id*. *See Bell v. Cone*, 535 U.S. 685, 702 (2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); *Strickland, supra*, at 689; *United States v. Cronic*, 466 U.S. 648, 656 (1984); *Cullen v. Pinholster*, 563 U.S. 170 (2011). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently

19

unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

As to Movant's claim against appellate counsel, he provides no factual support for the claim. Bare, conclusory, allegations of ineffective assistance do not satisfy *Strickland. See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320 (11th Cir. 2012).

Ultimately Movant cannot satisfy both prongs of *Strickland*. Accordingly, **Claim 1** does not warrant relief and should be DENIED.

## B. *Claim 2*

*Successive Prosecutions by Different Sovereigns Do Not Violate the Double Jeopardy Clause.*

In **Claim 2**, Movant claims the Indictment violates principles of Double Jeopardy because he was charged with the same offense by the state in Miami-Dade County Case No. F15-021349, for which he was convicted and sentenced to five years in state prison. [CV-ECF No. 1 at 5, 16]. The government correctly asserts that successive prosecutions by different sovereigns do not violate the Double Jeopardy Clause. [CV-ECF No. 6, at 11]. Movant's claim fails

It is well settled "that two identical offenses are not the 'same offence' within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns." *Heath v. Alabama*, 474 U.S. 82, 92 (1985). This longstanding principle extends more than seventy years. *See United States v. Lanza*, 260 U.S. 377, 382,

(1922) ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."). Even more recently, the Supreme Court rejected a nearly identical argument in *Gamble v. United States*, 139 S. Ct. 1960 (Jun. 17, 2019) (Double jeopardy does not preclude a defendant convicted in Alabama for possessing a firearm as a felon from prosecution by the United States under its own felon-in possession law.).

Accordingly, **Claim 2** is without merit and should be DENIED.

### *C. Claim 3*

*Movant's Claim that Counsel Failed to Object to the Criminal History Points is Controverted by the Record.*

In **Claim 3**, Movant claims counsel was ineffective for failure to object to the PSR for the three points incurred for Miami-Dade County Case No. F98-18040 and two points incurred for Miami-Dade County Case No. F14-11050 in calculating his criminal history. [CV-ECF No. 1 at 6, 16]. The government asserts that the calculation was appropriately calculated; therefore, counsel was not ineffective. [CV-ECF No. 6 at 9]. Movant's claim fails because it is refuted by the record.

As narrated above, Movant's counsel did file objections to the PSR challenging the calculation of *all* criminal history points. [CR-ECF No. 58]. In addition, at the sentencing hearing, counsel renewed his objections and asked the court not to factor in the lewd act conviction. [CR-ECF No. 67 at 4-7, 9-12]. The court granted counsel's objections because the factual predicate for the offenses in

those state cases was not established. [*Id*. at 7-18]. The court considered the § 3553(a) factors and did not consider the lewd assault. [*Id*. at 27-28]. However, because Movant had a prior second-degree murder conviction (Miami-Dade County Case No. F03-21366) and because in the instant offense involved two stolen firearms, the court departed upward from the guidelines and sentenced Movant to 72 months in prison to protect the public. [*Id*. at 30-31]. The upward departure was affirmed by the Eleventh Circuit. *United States v. Williams*, 721 F. App'x 905 (11th Cir. 2018).

Because the record controverts Movant's claim, counsel cannot be found deficient. Movant cannot meet either prong of *Strickland*. Accordingly, **Claim 2** does not warrant relief and should be DENIED.

## D. Claim 4

*Movant's Claim of Prosecutorial Misconduct Was Not Raised on Direct Appeal, is Procedurally Barred and Fails on the Merits.*

In **Claim 4**, Movant alleges prosecutorial misconduct for submitting the traffic citation as an exhibit at the suppression hearing in order to demonstrate probable cause where the citation was dismissed one year earlier. [CV-ECF No. 1 at 8, 16-17]. Liberally construed, Movant claims a "Giglio violation" but provides no factual support for the claim. [*Id*. at 17.]. The government asserts that the claim is procedurally defaulted because it is a matter which could have been raised on direct appeal and, alternatively fails on the merits because the citation supported the stop,

22

as did the witness testimony and the jailhouse phone call. [CV-ECF No. 6 at 9]. The government also addresses the claim as a possible failure to disclose evidence claim and asserts that there was no obligation to furnish him with information he already had or could have obtained himself. [*Id*. at 10]. Movant's claim fails.

Movant's claim is not a constitutional one. The claim could have been raised on direct appeal but was not. Accordingly, the claim is procedurally barred. *Lynn v. United States*, 365 F.3d at 1232. To the extent Movant attempts to raise a *Giglio* violation, such a claim fails. A *Giglio* violation occurs when the government withholds evidence that would tend to impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The government can hardly be found to be withholding evidence of the citation when it was directly issued to Movant on the day of his arrest. Finally, the court clearly relied on other evidence at the suppression hearing, most notably the testimony of the witnesses, and Movant's own admissions.

Even if the traffic citation was eventually dismissed, it is of no consequence in the final analysis. At his plea and sentencing hearings, Movant agreed with the government's characterization of his conduct and signed a factual proffer supporting a negotiated plea agreement. Movant cannot demonstrate his statements made under oath at his plea colloquy were false. *Rogers*, 848 F.2d at 168. Therefore, Movant's guilty plea must stand. *Brady*, 397 U.S. at 748.

Accordingly, **Claim 4** fails and should be DENIED.

23

*E.  Claim 5*

*Movant is Not Entitled to Relief under Rehaif v. United States*

In his permitted supplements, Movant raises a claim pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (Jun. 21, 2019). [CV-ECF Nos. 12 and 16]. Movant claims that the indictment was defective because it did not put him on notice of all elements of the offense; and had counsel properly investigated the case he would have discovered that Movant was not serving a term for a prior conviction. [CV-ECF No. 12 at 3]. Movant claims that he was not on notice that he "knew" he was a convicted felon at the time of his possession of a firearm. [*Id*. at 7]. Movant asserts that because he was not serving any term at the time he was, therefore, unknowing of his status as being one in the "relevant category." [*Id*. at 3-4]. Movant believes that because he was unaware that he belonged to a relevant category of persons barred from possessing a firearm that he should have been counseled to assert he was actually innocent of the crime rather than advised to enter a guilty plea. [*Id*. generally]. The Court did not seek a response from the government as to this claim because the record sufficiently refutes Movant's assertions.

The Supreme Court of the United States, in *Rehaif* held that in order to support a conviction under 18 U.S.C. § 922(g), at trial, the government is required to prove the defendant knew he possessed a firearm and that he belonged to the relevant category of persons barred from possessing a firearm. *Rehaif v. United States*, 139

S. Ct. at 2200. But *Rehaif* does not render § 922(g) void; the statute remains intact. *Rehaif* emphasizes that the language of the statute, as well as the presumption of scienter, already requires that the defendant "knowingly violates" the statute. *Id*. at 2197.

      *Rehaif* differs from the instant case. In *Rehaif*, the defendant did not know that he was an alien illegally or unlawfully in the United States in order to have the guilty state of mind required by § 922(g). *Id*. at 2198. Moreover, the jury in that case was improperly instructed that the government did not have to prove the defendant knew he "was illegally or unlawfully in the United States." *Id*. at 2194. Here, Movant entered a knowing and voluntary guilty plea aware that he was a convicted felon at the time he possessed the firearm in the underlying case. In his factual proffer, Movant admitted to being convicted in 2005 for attempted second-degree murder, for which he was sentenced to eleven years in prison. [CR-ECF No. 53]. At his plea hearing, Movant admitted to the facts presented in the proffer, discussed it with counsel, and confirmed no deletions or corrections were necessary. [CR-ECF No. 66 at 10-11]. Movant plead guilty because he was, in fact, guilty. [*Id.*]. At sentencing, Movant admitted his criminal history stating he "endured every form of incarceration," including state prison for "ten years and 11 months and six days." [CR-ECF No. 67 at 25-26]. Movant's assertion presented in his supplement that because he was not currently serving a term in state custody he was, therefore,

25

unaware of his status as a felon is unpersuasive. To the extent Movant argues that his charging document was defective, a guilty plea waives all non-jurisdictional defects. *United States v. Stokeling*, 2020 U.S. App. LEXIS 183, 2020 WL 57874 (11th Cir. Jan 6, 2020) (internal citations omitted). "[T]he omission of a *mens rea* element from an indictment does not divest the district court of subject matter jurisdiction to adjudicate a criminal case. *Id*. at \*6.

Finally, Movant is not entitled to relief because he "show[s] [no] reasonable probability that, but for the error, he would not have entered [his] plea." *United States v. Moriarty*, 429 F.3d 1012, 1020 (11th Cir. 2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). Movant presents no evidence that he is not bound by the statements he made under oath at his plea and sentencing hearings. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("there is a strong presumption that the statements made during the colloquy are true"). Because the record establishes that Movant knew of his status as a felon, he cannot prove that he was prejudiced by the error during his plea colloquy.

Accordingly, Movant's guilty plea must stand; and **Claim 5** should be **DENIED**.

### F.  Fundamental Miscarriage of Justice/Actual Innocence

To the extent Movant attempts to raise "actual innocence" as a claim in this proceeding, no fundamental miscarriage of justice will result if the court denies the

instant motion to vacate. A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.2d at 892.

As a threshold matter, the Eleventh Circuit has never held that Section 2244(d)'s limitations period carries an exception for actual innocence; and it has declined to reach the issue whether the absence of such an exception would violate the Constitution. *See Taylor v. Sec'y, Dep't of Corr.*, 230 F. App'x 944, 945 (11th Cir. 2007) ("[W]e have never held that there is an 'actual innocence' exception to the AEDPA's one-year statute of limitations, and we decline to do so in the instant case because [the petitioner] has failed to make a substantial showing of actual innocence."); *Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213, 1218-19 (11th Cir. 2000) (leaving open the question whether the § 2244 limitation period to the filing of a first federal habeas petition constituted an unconstitutional suspension of the writ). *But cf. United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2000) ("Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by appellant's failure to timely file his § 2255 motion.").

27

However, several other circuits have recognized such an exception. *See, e.g., Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005); *Flanders v. Graves*, 299 F.3d 974 (8th Cir. 2002).

Even if there were an "actual innocence" exception, the Court would still be precluded from reviewing the claims presented in the instant petition on the merits. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the "'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006).

Courts have emphasized that actual innocence means factual innocence, not mere legal insufficiency. *Id.*; *see also High v. Head*, 209 F.3d 1257 (11th Cir. 2000); *Lee v. Kemna*, 213 F.3d 1037, 1039 (8th Cir. 2000); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107 (2d Cir. 2000) (*citing Schlup v. Delo*, 513 U.S. 298, 299, (1995); *Jones v. United States*, 153 F.3d 1305 (11th Cir. 1998) (holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). *See also Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). To be credible, a claim of actual innocence requires the petitioner to

"support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324.

Petitioner has failed to make a substantial showing of "actual innocence" of the crime for which he was found guilty following his knowing and voluntary plea of guilt and the appellate court's affirmation of his conviction. *United States v. Williams*, 721 F. App'x 905 (11th Cir. 2018). His claims warrant no habeas corpus relief. *See e.g., Scott v. Duffy*, 372 F. App'x 61, 63-64 (11th Cir. 2010) (rejecting habeas petitioner's actual innocence claim where no showing made of factual innocence of aggravated assault underlying his probation revocation and instead merely cited to evidence from probation revocation hearing and argued it did not support revocation of probation); *see also, Bousley v. United States*, 523 U.S. 614, 623 (1998).

## VII.   Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an

evidentiary hearing). *See also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

Where, as here, there are absolutely no facts offered to support Movant's claims, the Court does not need to conduct an evidentiary hearing.

## VIII.    Certificate of Appealability

"A certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows…that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, in view of the entire record, the Court should deny a certificate of appealability. If Movant disagrees, he may so argue in any objections filed with the District Judge. *See* Rule 11(a), Rules Governing § 2255 Proceedings ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## IX.   Recommendations

Based on the foregoing, it is recommended that the motion to vacate be DENIED on the merits, that no certificate of appealability issue, and, that this case be CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

SIGNED this 2nd day of September, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:   Brandon Nathan Forbes
      16044-104
      D. Ray James Correctional Institution
      Inmate Mail/Parcels
      Post Office Box 2000
      Folkston, GA 31537
      PRO SE

      Breezye Telfair
      U.S. Attorney's Office
      11200 NW 20th Street, Suite 101
      Miami, FL 33172
      305-715-7644
      Fax: 305-715-7639
      Email: Breezye.Telfair@usdoj.gov